[File No. 6012.]

IMPLEMENT DEALERS MUTUAL FIRE INSURANCE COM-
PANY, a Corporation, Respondent, v. C. A. MYRON, et al.

GOODYEAR TIRE & RUBBER COMPANY, INC., and Deere &
Webber Company, a Corporation, Respondents, v. ANDREW
MYRON, Appellant.

(242 N. W. 404.)

Opinion filed April 23, 1932.

*Conmy, Young & Conmy,* for appellant.

*W. B. Arnold,* for petitioner.
*Soule & Pierce,* for respondents.

BIRDZELL, J. For several years prior to 1931 C. A. Myron was engaged in the garage business and in selling farming implements, automobiles, accessories, et cetera, in the village of Abercrombie, North Dakota. He held an agency contract for the Deere & Webber Company and handled their line of goods. He carried fire insurance in the Implement Dealers Mutual Fire Insurance Company. On or about March 31, 1931, his place of business was destroyed by fire and after the fire the Deere & Webber Company brought action against Myron to recover a judgment for his indebtedness to the company, joining the Implement Dealers Mutual Fire Insurance Company as garnishee. The Goodyear Tire & Rubber Company likewise attempted to garnishee money in the hands of the insurance company and it was also claimed by Andrew Myron, brother of C. A. Myron, as a mortgagee and assignee. The insurance company petitioned the district court of Cass county to designate a depository for the deposit of $3,389.18 as the amount of its liability under the policy and that it be discharged from all further liability. An order was made directing the deposit with the clerk of the district court and ordering notice to the insured, to the Deere & Webber Company, the Goodyear Tire & Rubber Com-

pany and Andrew Myron. Thereafter issues were framed with respect to the fund between the Deere & Webber Company and Andrew Myron, which were tried before the court without a jury. A judgment was entered supporting the claim of the Deere & Webber Company and directing the clerk to pay over the money to it. From this judgment Andrew Myrons appeals to this court. A brief statement of facts will be sufficient to convey an understanding of the issues involved in this appeal.

While C. A. Myron was conducting his garage and machinery business in Abercrombie, his brother Andrew was farming in the vicinity. In April, 1928, Andrew Myron quit farming and started working for his brother. From time to time he loaned his brother money which was apparently needed and used in the conduct of the business. A final settlement was had between them in January, 1931, as a result of which C. A. Myron gave his note to Andrew for $2,900.00, which covered the amount of previous notes that had been given for loans as made. This note was secured by a chattel mortgage on the stock covered by the insurance policy. The insurance policy bears the following assignment:

"The interest of C. A. Myron as owner of the property covered by this policy is hereby assigned to Andrew Myron subject to the consent of the Implement Dealers Mutual Fire Insurance Company.

"Dated Jan. 2d, 1931.                                           C. A. Myron."

In the years 1929 and 1930 C. A. Myron had entered into agency contracts with Deere & Webber Company, which contained, among other provisions, the following stipulation:

"That the dealer shall continuously keep all good shipped him under this contract, and all other merchandise kept in and about his place of business at the city or town at which this contract is dated, and his buildings wherein said business is conducted, and equipment, continuously insured for its insurable value, against loss or damage by fire, cyclone and tornado, and cause all of the policies therefor to be made loss payable to the company, as its interest may appear, as security for the payment of all debts now owing and all debts hereafter arising from the dealer to the company while any such debt remains unpaid in whole or in part."

These contracts were filed in the office of the register of deeds, the

last, that for 1930, being filed on the 7th of February, 1930. In December, 1930, C. A. Myron, being rather heavily indebted to the Deere & Webber Company for goods purchased, at the instance of one of the company's agents, directed the following letter to the insurance company:

"Dec. 22, 1930.

"Implement Dealers Mutual Fire Ins. Co.,
"Grand Forks, No. Dak.
"Gentlemen:

"Please attach Loss Payable Clause to my policy in favor of Deere and Webber Co. as their interest may appear.

"Yours truly,

"C. A. Myron."

This letter of direction was handed to Mosher, agent for the Deere & Webber Company, for delivery to its representative at Fargo. At the time it was stated to Mosher, according to his testimony, that Myron's policy was in a bank at Fargo, that he would get it and turn it over to the Deere & Webber Company's representative at that place. C. A. Myron testified that he retained the policy at all times until he turned it over to Andrew in January, 1931, and that he did not tell Mosher it was in a bank in Fargo. The policy was never delivered to Deere & Webber Company, nor was the letter of direction brought to the insurance company's attention.

At the time of the making of the 1930 agency contract Myron furnished a financial statement to the Deere & Webber Company which did not disclose any indebtedness owing to Andrew Myron, although other indebtedness to the extent of $1,075.00 was listed. On April 3, 1931, a few days after the fire, Myron furnished another financial statement showing $3,626.71 owing to the Deere & Webber Company and $1,100.00 owing to Andrew Myron and shown to be secured by fixtures that were burned up. The testimony is in dispute as to whether at the time this financial statement was furnished C. A. Myron had correctly stated to the company's agent his indebtedness to Andrew and the statement had been incorrectly transcribed, or whether he was directly responsible for the error in the statement.

In addition to the contract stipulation with reference to insurance, which is quoted above, there are other provisions requiring the dealer

to give his notes for the purchase price of any and all goods shipped under the contract and which had not been paid for in money, to secure any indebtedness and reserving title and ownership of all goods shipped until full payment. The character of the security he is required to furnish is not stated. He was not specifically bound to mortgage his other merchandise, equipment or machinery to secure his indebtedness to the Deere & Webber Company. The evidence does not show the destruction by fire of any property which had been ordered or purchased by the dealer from the Deere & Webber Company with the possible exception of a small loss of fifty dollars or less on cast iron parts. It shows, rather, that the loss insured against and on account of which the insurance money was paid was occasioned by the destruction of the contents of the garage, which did not contain any substantial amount of property that had been furnished to Myron under the contract with the Deere & Webber Company.

The principal question to be determined is whether or not the contract stipulations quoted above, together with the letter of direction to attach a loss payable clause in favor of Deere & Webber Company as their interest may appear and which was not delivered to the insurance company, are sufficient to vest in the respondent a right to the proceeds of the insurance as against the insured or Andrew Myron. Considering the insurance policy as a chose in action, it might, of course, be assigned so as to transfer the right of C. A. Myron, both as against him and a subsequent assignee succeeding only to his rights, without a formal written assignment. See Hecker v. Commercial State Bank, 35 N. D. 12, 159 N. W. 97, 37 Am. Bankr. Rep. 809. But it is incumbent on one claiming as an assignee to establish the assignment by a preponderance of the evidence. The policy or chose was not directly assigned to the respondent. The dealer's contract merely obligated Myron to keep insured all goods that were shipped to him under the contract and all other merchandise kept in his place of business for its insurable value and to cause "all of the policies therefor to be made loss payable to the company, *as its interest may appear,* as security for the payment of all debts now owing and all debts hereafter arising from the dealer to the company while any such debt remains unpaid in whole or in part." (Italics supplied.) As to any insurance effected on goods shipped under the contract and as to which

the Deere & Webber Company had reserved title and ownership, the insurable interest of the latter would clearly be such that, as between it and the dealer, the proceeds of the insurance would equitably take the place of the goods and it would require but little, if any, additional evidence of intention on the dealer's part to protect the equitable position of the company as against the dealer or a subsequent assignee, but we are not dealing with such a case. The insurance in this instance was paid on account of a loss to merchandise which was not owned by the respondent and upon which it had no mortgage or lien of any sort and, so far as the evidence shows, toward the accumulation of which it had not contributed in any substantial degree. The only obligation of the dealer as to such property was to cause a loss payable clause to be inserted in favor of the company "as its interest may appear." As it had no interest in the property or any relation thereto, or liability in respect thereof of such a nature that a contemplated peril might damnify it (see § 6466, Comp. Laws 1913), it is difficult to see how the actual insertion of a loss payable clause would have operated in this instance to have transferred a right to the proceeds of the insurance. Since there was no assignment of the policy to the respondent and since the dealer had not contracted to give to it a chattel mortgage or other lien upon merchandise acquired from other sources, and since the only transaction between Myron and the company with reference to the insurance involved merely an uncommunicated direction to the insurer to make the loss payable to the respondent as its interest may appear, there is no legal basis upon which the claim of the respondent to the insurance in question can rest. It follows that the judgment in its favor must be reversed.

The indebtedness of C. A. Myron to Andrew Myron, both for borrowed money and for wages or salary, was established upon the trial by satisfactory proof, as was also the assignment of the insurance policy. It was also established that C. A. Myron had given to Andrew Myron a chattel mortgage on the insured property as security for the indebtedness, although the mortgage itself was not introduced in evidence. The claim of Andrew Myron being well supported and he having an assignment of the insurance policy, he is entitled to a judgment for the proceeds on deposit.

The judgment appealed from is reversed and the cause remanded with directions to enter a judgment in favor of Andrew Myron.

CHRISTIANSON, CH. J., and NUESSLE, BURR and BURKE, JJ., concur.